NA

**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Lewis A. Martin,

                Plaintiff,

v.

Joseph M. Arpaio, et al.,

                Defendants.

No.  CV 13-2639-PHX-DGC (MEA)

**ORDER**

      On December 27, 2013, Plaintiff Lewis A. Martin, who is confined in the Arizona State Prison Complex-Florence, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed *In Forma Pauperis*.  In a February 18, 2014 Order, the Court granted the Application to Proceed and dismissed the Complaint because Plaintiff had failed to state a claim.  The Court gave Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the Order.  On March 6, 2014, Plaintiff filed his First Amended Complaint.  In a May 8, 2014 Order, the Court dismissed the First Amended Complaint, because Plaintiff had failed to state a claim. The Court gave Plaintiff 30 days to file a second amended complaint that cured the deficiencies identified in the Order.

      On May 23, 2014, Plaintiff filed an unsigned Second Amended Complaint (Doc. 10).  In an August 4, 2014 Order, the Court required Plaintiff to complete and sign a Certificate provided by the Court certifying that Plaintiff's signature on the Certificate

1  shall serve as an original signature on his Second Amended Complaint.  On August 14,
2  2014, Plaintiff filed the signed Certificate.  On November 4, 2014, Plaintiff filed a notice
3  of change of address and asked the Court to provide him with the status of his case
4  ("Motion for Status") (Doc. 15).

5      The Court will grant Plaintiff's motion for status to the extent discussed herein.
6  The Court will grant Plaintiff 90 days from the filing date of this Order in which to file a
7  notice of substitution of the names of John Doe #7 and John Doe #8 in connection with
8  Count I and will dismiss Count II and the remaining Defendants without prejudice.

9  **I.      Statutory Screening of Prisoner Complaints**

10      The Court is required to screen complaints brought by prisoners seeking relief
11  against a governmental entity or an officer or an employee of a governmental entity.  28
12  U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff
13  has raised claims that are legally frivolous or malicious, that fail to state a claim upon
14  which relief may be granted, or that seek monetary relief from a defendant who is
15  immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

16      A pleading must contain a "short and plain statement of the claim *showing* that the
17  pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8
18  does not demand detailed factual allegations, "it demands more than an unadorned, the-
19  defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678
20  (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere
21  conclusory statements, do not suffice."  *Id.*

22      "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a
23  claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*,
24  550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual
25  content that allows the court to draw the reasonable inference that the defendant is liable
26  for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible
27  claim for relief [is] . . . a context-specific task that requires the reviewing court to draw
28  on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's

specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally."  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)).

**II.     Second Amended Complaint**

Plaintiff sues the following Defendants in his two-count Second Amended Complaint: the Maricopa County Sheriff's Department; Maricopa County Sheriff Joseph M. Arpaio; Dr. Alvarez, Director of Correctional Health Services; Correctional Health Services; Correctional Health Services "Medical Staff 1, 2, 3 . . . etc. . ." at the Fourth Avenue Jail; and "John/Jane Doe 1, 2, 3 . . .," identified as "Detention and/or Deputy Officers" at the Fourth Avenue Jail.  Plaintiff seeks damages, injunctive relief, and discovery.

In Count I, Plaintiff asserts claims of excessive force, unreasonable search and seizure, and violations of his Fourth, Eighth and Fourteenth Amendment rights.  He alleges the following facts: Plaintiff was arrested on August 19, 2013 and taken to the Fourth Avenue Jail for processing.  Maricopa County Sheriff's Office and Correctional Health Services have a "well-documented history" of Plaintiff's mental health issues, including "post[-]traumatic stress disorder, paranoid[] delusional behavior[,] and organic brain damage."  "Plaintiff is a documented 'seriously mentally ill' patient of a state run agency[,] 'Mercy Maricopa,' formally known as Magellan, and rec[ei]ves medical benefits, including p[sy]chotropic, depression, seizure[,] and anxiety medications."  Plaintiff was homeless, off his medication, and "exhibiting obvious mental health deterioration by exhibiting extreme paranoia and delusional behavior."  At some point, Plaintiff was diagnosed with nightmares and post-traumatic stress disorder while at the

Fourth Avenue Jail.

Plaintiff had a health assessment within one hour of arriving at the Fourth Avenue Jail.  "Medical Staff Jane Doe #1" performed the health assessment, but did not recognize Plaintiff's "deteriorating status."   Plaintiff had to wait to be processed in the "pre fingerprinting tank," which is approximately twelve feet wide by twenty feet long and contained approximately 25-35 people.  This cramped room "further served to exacerbate Plaintiff's already deteriorating mental status."

Several hours later, Plaintiff was approached by "Jane and/or J[oh]n Doe Deputy/Detention Officers as 1, 2, 3, 4, 5, and 6."  A detention officer told Plaintiff that he was being moved to the "strip cell where he was to remove his cloth[e]s to be searched."  Plaintiff was not provoking, aggressive, or threatening to himself or others.  Plaintiff was stripped of all clothing and left naked and alone in a padded cell without a blanket, water, or plumbing.   "Sometime later, exact time unknown, Plaintiff was approached, while lying on his stomach naked, non[-]aggressive and told to roll over."  Plaintiff refused to roll over and "for his refusal was tased in the back by an unknown J[oh]n Doe D.O. (#7?)."   Plaintiff requested medical attention for psychiatric and physical trauma to his back, neck, side and legs "before, during and after the above listed circumstance, on or within 24 hours," which was denied "out of hand."

"Plaintiff remained in the 'padded' room naked for approxim[a]t[e]ly 2-3 hours longer at which time he was given a pair of pink boxers by J[oh]n/Jane Does (D.O.) #8 and #9 and placed into a transport van, naked except for the boxers and slippers, and transported to another detention unit, Lower Buckeye Jail."  There are dividers in the van to separate the detainees; Plaintiff was placed in one division and three females were placed in other divisions in the van.  Plaintiff suffered further emotional trauma from this situation.

When Plaintiff had to attend court he was "routinely processed inappropriately and without just cause, to and from court."  A pre-court strip search was conducted in private.  The post-court strip search was conducted in the "Pink Cage" in front of cameras and

"with any # of staff, female and otherwise, as well as visitors who walk the hallways, being witnesses to Plaintiff's demoralization."   The strip searches consisted of "surrendering all clothing and legal papers taken to and returned from court."   "Plaintiff was required to turn his back to John Doe D.O. #8 and others unnamed and as yet identified . . . bend forward and with both hands spread his cheeks, exposing his anus, stand up, turn around and lift his genitals, squat and cough, expose armpits and soles of feet and finally run his fingers through his hair."   Plaintiff was "then required to dress himself without the benefit of soap, water or sanitary lotion to sanitize his hands."

Plaintiff alleges that the Maricopa County Sheriff's Department is liable for his "injur[i]ous harm" by its policy of "stripping of Plaintiff in which excessive and abusive force was utilized," placing Plaintiff, a mentally ill detainee, in a "stripped," padded cell "with no provocation," and by denying Plaintiff medical treatment.   Plaintiff further alleges that Defendant Arpaio is liable, as "executor" of the policies at the Fourth Avenue Jail, by allowing his officers to "treat Plaintiff thus," by not training staff for handling a mentally unstable detainee, and "for his continuing indifference to the arbitrary treatment levied against Plaintiff."   He alleges that "Defendants John Doe/Jane Doe" are liable for his "mental anguish, physical pain to body, exacerbation to pre-existing mental illness through acts of physical abuse with the strip search, [and] tasing with an electrical device[.]"   Finally, he alleges that Defendant Alvarez and "CHS John/Jane Doe #1" are liable for their "indifference to medical needs during the initial evaluation" and that John Does 1-9 are liable "throughout Plaintiff's intake" as well as for their "indifference to Plaintiff's physical needs, blankets, water, etc., while in a padded cell were also denied[.]"

Plaintiff designates Count II as a denial of basic necessities, the right to be free from "unreasonable search/seizure," and the right to be free from cruel and unusual punishment.   Plaintiff alleges the same facts as in Count I.   He further alleges that the Maricopa County Sheriff's Department is liable for its policies related to the "manhandled strip search, the transport inc[i]dent" and the "denial/indifference to a

mental health patient[']s medical needs." Plaintiff alleges that John Does 1 through 6 used excessive force and denied his needs by "stripp[ing] [Plaintiff] with no provocation other than he may have been acting a little 'weird.'" In addition, Plaintiff alleges that Defendants Arpaio and Alvarez are liable as "leaders of their respected offices" and that "the policies and standard operating procedures that incorporate create an environment where rights are constantly violated."

## III.   Failure to State a Claim

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989). A plaintiff must also allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Moreover, although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. Id.

### A.   Defendant Arpaio

To state a valid claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a specific defendant and show an affirmative link between the injury and the conduct of that defendant. *See Rizzo*, 423 U.S. at 371-72, 377. There is no *respondeat superior* liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691-92 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Because vicarious

liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff has failed to allege sufficient facts against Defendant Arpaio in his Second Amended Complaint. Plaintiff alleges that Arpaio is liable as "executor" of the policies at the Fourth Avenue Jail, as leader of his "respected office," for allowing his officers to "treat Plaintiff thus," and by not "training staff for handling a mentally unstable detainee." These vague and conclusory references to Arpaio's liability are insufficient to state a claim under § 1983. Plaintiff does not allege that Arpaio directly violated his constitutional rights. Moreover, Plaintiff does not allege facts to support that his constitutional rights were violated as a result of a specific policy or custom promulgated or endorsed by Arpaio. For example, Plaintiff does not allege that the post-court strip searches in the "Pink Cage" were conducted pursuant to a policy or custom promulgated or endorsed by Arpaio or that the tasing of a mentally ill detainee for refusing an order was pursuant to a custom or policy. Accordingly, Defendant Arpaio will be dismissed.

### B.     Maricopa County Sheriff's Office

Plaintiff names the Maricopa County Sheriff's Office (MCSO) as a Defendant; however, MCSO is not a proper defendant. Claims under § 1983 are directed at "bodies politic and corporate." *Monell*, 436 U.S. at 688-89. Under the Civil Rights Act of 1871, Congress intended municipalities and other local government units to be included among those persons to whom § 1983 applies. *Id*. at 689-690. In Arizona, the responsibility for operating jails and caring for prisoners is placed by law upon the sheriff and the County. *See* Ariz. Rev. Stat. §§ 11-251(8), 11-291(A), 11-441(A)(5), 31-101. MCSO is simply an administrative creation of the sheriff to allow him to carry out his statutory duties; it is not a "person" amenable to suit pursuant to § 1983. *See*, *e.g., Petaway v. City of New Haven Police Dep't*, 541 F. Supp. 2d 504 (D. Conn. 2008); *Pahle v. Colebrookdale Twp.*, 227 F. Supp. 2d 361 (E.D. Pa. 2002). Accordingly, MCSO will be dismissed

### C.       Correctional Health Services

Although not clear, it appears that Plaintiff may be attempting to sue Correctional Health Services (CHS).  While Arizona places responsibility for operating county jails by law upon the sheriff, see Ariz. Rev. Stat. §§ 11-141(A)(5), 31-101, Maricopa County is responsible for the provision of medical care to inmates.  CHS is an administrative creation of the County and is not a "person" amenable to suit under § 1983.  Accordingly, CHS will be dismissed.

### D.       "Correctional Health Services Medical Staff 1, 2, 3 . . . etc."

Plaintiff sues "Correctional Health Services Medical Staff 1, 2, 3 . . . etc." Plaintiff does not allege any facts against "Correctional Health Services Medical Staff 1, 2, 3 . . . etc."  Accordingly, "Correctional Health Services Medical Staff 1, 2, 3 . . . etc." will be dismissed.

### E.       Medical Care

To the extent that Plaintiff may be attempting to assert  inadequate medical care at the Fourth Avenue Jail, Plaintiff should be aware that not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth or Fourteenth Amendment.  To state a § 1983 medical claim, a plaintiff must show that the defendants acted with "deliberate indifference to serious medical needs."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent.  *Jett*, 439 F.3d at 1096 (quotations omitted).

"Deliberate indifference is a high legal standard."  *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837

(1994).  Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference.  *Jett*, 439 F.3d at 1096.  Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs.  *Estelle*, 429 U.S. at 104-05; *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety.  *Farmer*, 511 U.S. at 835.  "Neither negligence nor gross negligence will constitute deliberate indifference."  *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983).  "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference.  *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  The indifference must be substantial.  The action must rise to a level of "unnecessary and wanton infliction of pain."  *Estelle*, 429 U.S. at 105.

In Counts I and II, Plaintiff alleges that he had a health assessment within one hour of arriving at the Fourth Avenue Jail.  Jane Doe #1 performed the health assessment, but allegedly failed to recognize Plaintiff's "deteriorating status."  According to Plaintiff, Jane Doe #1 "has an obligation[,] as a licen[s]ed healthcare worker, based on training and experi[e]nce to recognize medical problems . . ."  Plaintiff further alleges that "Dr. Alv[a]rez, director of C.H.S. has a responsibility to [e]nsure proper conduct by staff and thus should be held accountable when his staff shows indifference to an inmate[']s medical need as was exhibited here."  Later in his Second Amended Complaint, Plaintiff alleges that he was diagnosed with nightmares and post-traumatic stress disorder while at the jail.

Plaintiff does not allege facts to support that any Defendant knew, or should have known, that he was suffering from serious mental illness at his initial health assessment or knew of his previous mental health problems at that time.  Nor does he allege that he informed Jane Doe #1 or Dr. Alvarez that he had a serious medical need or facts to support that they were deliberately indifferent to that serious medical need and knew, or should have known, that failure to take further steps posed an excessive risk to his health.  In addition, Plaintiff alleges that after he was tased he requested medical attention for psychiatric and physical trauma to his back, neck, side and legs, which was denied "out of hand."  Plaintiff provides no other information about these alleged injuries, to whom he directed his request(s) for medical attention, or other facts to support that any Defendant was deliberately indifferent to a serious medical need.  Accordingly, Plaintiff has failed to state a claim of deliberate indifference to a serious medical need in Counts I and II.  Further, although Plaintiff did not properly name Jane Doe #1 as a Defendant, to the extent he is attempting to sue Jane Doe #1D, as well as Dr. Alvarez, the Court will dismiss Defendants Jane Doe #1 and Dr. Alvarez as Defendants.

### F.     Cruel and Unusual Punishment

Plaintiff alleges that his Eighth Amendment right to be free from cruel and unusual punishment was violated.  A pretrial detainee's claim for unconstitutional conditions of confinement arises from the Fourteenth Amendment's Due Process Clause rather than from the Eighth Amendment prohibition against cruel and unusual punishment.  *Bell v. Wolfish*, 441 U.S. 520, 531 (1979).  Nevertheless, the same standards are applied, requiring proof that the defendant acted with deliberate indifference.  *See Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

To state a claim for unconstitutional conditions of confinement, a plaintiff must allege that a defendant's acts or omissions have deprived the inmate of "the minimal civilized measure of life's necessities" and that the defendant acted with deliberate indifference to an excessive risk to inmate health or safety.  *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994) (quoting *Farmer*, 511 U.S. at 834); *see Estate of Ford v. Ramirez-*

*Palmer,* 301 F.3d 1043, 1049-50 (9th Cir. 2002).  Whether conditions of confinement rise to the level of a constitutional violation may depend, in part, on the duration of an inmate's exposure to those conditions.  *Keenan v. Hall*, 83 F.3d 1083, 1089, 1091 (9th Cir. 1996) (citing *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978)).  "The circumstances, nature, and duration of a deprivation of [] necessities must be considered in determining whether a constitutional violation has occurred."  *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)).  Thus, for example, to state a claim regarding personal security, the detainee must show that the defendant was deliberately indifferent.  *Redman v. County of Los Angeles*, 942 F.2d 1435, 1443 (9th Cir. 1991) (*en banc*).  To adequately allege deliberate indifference, a plaintiff must allege facts to support that a defendant knew of, but disregarded, an excessive risk to inmate safety.  *Farmer*, 511 U.S. at 832-33.  That is, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference."  *Id.*

It is not clear which conditions at the Fourth Avenue Jail Plaintiff is alleging violate the Eighth Amendment.  To the extent he is alleging that the conditions in the padded cell where he was held naked for several hours violate his Eighth Amendment rights, he fails to state a claim.  Plaintiff fails to allege how he was injured by conditions in the cell, which Defendant(s) refused his requests for medical or psychiatric attention, or other facts supporting that any Defendant was deliberately indifferent to an excessive risk to his health or safety.  For that reason, Plaintiff fails to allege sufficient facts to state an Eighth Amendment claim regarding his conditions of confinement in Counts I and II.

**IV.    Service Cannot Be Effected at this Time**

Liberally construed, Plaintiff sufficiently states a claim in Count I for excessive force by an officer against Defendant John Doe #7 and a Fourth Amendment claim regarding the post-court strip searches against John Doe #8.  However, the Court cannot direct that service be made on John Does #7 and #8 at this time.  Generally, the use of

fictitious names to identify defendants is not favored, and as a practical matter, it is in most instances impossible for the United States Marshal to serve a summons and complaint upon a fictitiously identified defendant.

The Court will allow Plaintiff 90 days in which to identify the Defendants by name, through subpoena or otherwise, and to substitute that names for Defendant John Doe #7 and John Doe #8 by filing a "notice of substitution." *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)) (where identity of alleged defendants will not be known prior to filing of complaint, plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds). Failure to timely file a notice of substitution will result in the dismissal of this action without prejudice for failure to prosecute.

**V.   Warnings**

**A.   Release**

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result in dismissal of this action.

**B.   Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

**C.   Copies**

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also,

Plaintiff must submit an additional copy of every filing for use by the Court.  *See* LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D.   Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)   Count II of the Second Amended Complaint is dismissed without prejudice.

(2)   Defendants Alvarez, Arpaio, Maricopa County Sheriff's Office, Correctional Health Services, Correctional Health Services "Medical Staff 1, 2, 3 . . . etc. . ." and all but John Does 7 and 8 of "John/Jane Doe 1, 2, 3 . . ." are **dismissed** without prejudice.

(3)   Plaintiff is granted 90 days from the filing date of this Order in which to discover by subpoena, or otherwise, the identities of Defendants John Doe 7 and John Doe 8 and to file a "notice of substitution" providing the Defendants' names in place of John Doe 7 and John Doe 8.

(4)   The Clerk of Court must issue two subpoenas in blank and send them to Plaintiff.

(5)   The Clerk of Court must enter a judgment of dismissal for failure to prosecute without prejudice and without further notice to Plaintiff, if Plaintiff fails to file a "notice of substitution" of parties within 90 days from the filing date of this Order.

. . . .

. . . .

. . . .

. . . .

1         (6)    Plaintiff's Motion for Status (Doc. 15) is **granted** to the extent set forth

2    herein.

3         Dated this 25th day of November, 2014.

David G. Campbell
United States District Judge